UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 19-136-DCR |
| ) | |
| V. ) | |
| ) | |
| RAKIM MOBERLY, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Rakim Moberly filed a motion to suppress evidence obtained as a result of an investigatory stop on April 11, 2019. [Record No. 18] The matter was referred to United States Magistrate Judge Matthew Stinnett for the issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Stinnett conducted an evidentiary hearing and issued a report, recommending that the Court deny Moberly's motion to suppress. [Record No. 28] Moberly filed objections to Magistrate Judge Stinnett's characterization of the scene and his behavior. He also objects to the magistrate judge's reliance on *United States v. Howard*, 632 F. App'x 795 (6th Cir. 2015).

This Court must make a *de novo* determination of those portions of the magistrate judge's recommendations to which timely objections are made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). "When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a *de novo* determination of the issues." *United States v. Woodruff*, 830 F. Supp. 2d 390, 396 (E.D. Tenn. 2011) (citing *United States v. Bermudez*, No. 99-6097, 2000 U.S. App.

LEXIS 33159, at *8-9 (6th Cir. Dec. 11, 2000)). Further, "credibility determinations of the magistrate judge who personally listened to the testimony . . . should be accepted unless in its *de novo* review of the record the district court finds a reason to question the magistrate judge's assessment." *Woodruff*, 830 F. Supp. 2d at 396 (internal citations and quotations omitted).

After considering the full record, the Court will adopt the magistrate judge's recommendation and deny Moberly's motion to suppress.

# I.

Officers received a call on April 11, 2019, regarding an individual potentially with a gun at 1840 McCullough Drive. [Record No. 27, p. 4] Officer Ryan Bedtelyon was dispatched to the scene. The 911 call was received at 8:09 a.m., and the original update provided to Bedtelyon from dispatch indicated that there might be a gun but there was no visual on the weapon. [Record No. 27, p. 4-5] Bedtelyon testified that the caller described a "male black with dreads, brown jacket, [who] has a gun" and drove a silver Oldsmobile. [Record No. 27, pp. 12-13] A few seconds later, Bedtelyon received a notification that the caller advised she did not know the suspect and she had been out all night watching her apartment because it had been burglarized. [Record No. 27, pp. 9-10] Dispatch advised that the caller ran to another building to get away and stated that the caller did not see a gun but that "he had something heavy in his pocket." [Record No. 27, p. 10]

Bedtelyon testified that, when he arrived on the scene, he observed an individual with dreadlocks and that the individual was the only person at the scene meeting that description. [Record No. 27, pp. 14-15] He also noticed that the individual was wearing a dark jacket and his demeanor led Bedtelyon to further investigate why he was there. The suspect was also

standing near a metallic-colored Buick LeSabre.[1]  Bedtelyon approached the suspect, later identified as Defendant Moberly, and asked about the incident.  Moberly explained that he had an altercation with a woman standing near him.  Moberly noted that, at one point, she pushed him and ran away.  [Body Cam at 0:39]  Bedtelyon mentioned to Moberly that the woman might have "mental issues" as a way of creating rapport to calm him down.  [Record No. 27, p. 20]  Other officers arrived at the scene and one interviewed the woman in question and confirmed she was the 911 caller.

While speaking with Moberly, Bedtelyon asked if he had a weapon on his person.  Moberly responded that he did not.  Bedtelyon then asked if Moberly would agree to a pat down but Moberly declined.  Bedtelyon then told Moberly he was going to pat him down for his safety and due to the nature of the call.  [Body Cam at 1:27-1:39]  He explained to Moberly that he would not be in any trouble and asked again if he was armed.  Moberly adjusted his stance and appeared to take a defensive position.  Bedtelyon asked in response if Moberly was "squaring up on him."  [Body Cam at 1:39]  Moberly said he was not.  Bedtelyon again asked if Moberly had a gun and Moberly admitted he had a gun in his left pocket.  [Body Cam at 2:01]  Bedtelyon recovered the firearm and Moberly sat on the curb.

Officers ran a background check and discovered that Moberly had a prior felony conviction.  Moberly was then arrested for being a felon in possession of a firearm.  Officers also recovered narcotics from Moberly's person after he was placed in custody.  Moberly was

---

[1] The facts do not exactly match the information received from the 911 caller, who referenced a brown jacket and a silver Oldsmobile.  However, Magistrate Judge Stinnett correctly notes the facts were similar enough for Officer Bedtelyon to believe that Moberly was the suspect because he had dreadlocks, a dark-colored jacket, and due to the similarity between the silver Oldsmobile and the gold Buick.

later indicted for three counts of possession with intent to distribute fentanyl, methamphetamine, and cocaine, in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [Record No. 1]

Moberly filed the pending motion to suppress the evidence recovered from his person during the April 11, 2019 incident. [Record No. 18] He asserts that police lacked the authority to legally detain and search him. [*Id*.] The parties agreed that Moberly was not free to leave during the encounter. As a result, Magistrate Judge Stinnett has focused on the legality of the search. The magistrate judge concluded that there was reasonable, articulable suspicion to believe Moberly was armed and dangerous. Accordingly, he recommended that the evidence discovered during the search conducted by Bedtelyon should not be subject to suppression. Moberly objects to the Court's reliance on *United States v. Howard*, 632 F. App'x 795 (6th Cir. 2015). [Record No. 29] He further objects to the characterization of the scene as volatile, frantic, and not secure. [*Id*.] Finally, he objects to the characterization that he was nervous and evasive. [*Id*.]

## II.

The Fourth Amendment protects individuals from unreasonable searches and seizures, including brief investigatory stops. *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010). The parties appear to agree that this was an investigative detention governed by *Terry v. Ohio* and its progeny. "*Terry* . . . permits a police officer briefly to detain a person or property for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Davis,* 430 F.3d 345, 354 (6th Cir. 2005) (citing *Farm Labor Org. Comm. v. Ohio State*

*Highway Patrol*, 308 F.3d 523, 543-44 (6th Cir. 2002)). Therefore, the Court must determine whether: (i) the stop was justified at its inception; and (ii) whether the officer's actions during the stop were reasonably related to the circumstances that justified the initial stop. *Terry v. Ohio*, 392 U.S. 1, 20 (1968).

Law enforcement "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts that reasonably warrant that intrusion." *Id.* at 21. "Where an informant tip, rather than police observation, is the basis of an investigatory stop, the tip must exhibit 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Robinson v. Howes*, 663 F.3d 819, 828 (6th Cir. 2011) (quoting *Fla. v. J.L.*, 529 U.S. 266, 270 (2000)). The Court looks at the totality of the circumstances to determine whether an officer had reasonable articulable suspicion. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

An officer may also "perform a precautionary search – known as a "frisk" or "pat down" – whenever he has 'reasonable suspicion' that the person searched may be armed and dangerous." *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016). However, there needs to be a separate justification from the stop to conduct a frisk. An officer needs a reasonable belief that the suspect is armed and dangerous. *Id*.

Magistrate Judge Stinnett's opinion focuses on whether there was reasonable articulable suspicion to conclude that Moberly was armed and dangerous. However, the Court must first determine whether there was reasonable articulable suspicion for the original investigatory stop. Much of Magistrate Judge Stinnett's analysis applies in resolving this issue.

Both parties and Magistrate Judge Stinnett compare this case to *Fla v. J.L.* to determine whether the 911 call and interactions at the scene were sufficient to form reasonable articulable

suspicion to perform an investigatory stop. In *J.L.,* the Supreme Court held that an anonymous tip that a person was carrying a gun, without more, was not enough to justify a police officer's stop and frisk. 529 U.S. at 268. The anonymous tip stated that there was a "young black male standing at a particular bus stop and wearing a plaid shirt and carrying a gun." *Id*. Nothing was known about the informant, it was unclear when law enforcement received the tip, the defendant did not make any threatening or unusual movements, the officers did not see a firearm, and besides the tip the officers did not have any reason to suspect illegal conduct. *Id*. As a result, the Court concluded the anonymous tip alone did not justify the stop and frisk.

Magistrate Judge Stinnett also references *Robinson v. Howes* in assessing whether there was reasonable articulable suspicion. In *Robinson*, a 911 caller reported shots fired from a yellow vehicle at a specific address. 663 F.3d at 821. When law enforcement arrived at the scene and spotted the yellow vehicle, the driver fled the vehicle and "a wrestling match ensued." *Id*. at 821-22. The Sixth Circuit concluded that the 911 call and the suspect's evasive conduct gave rise to reasonable suspicion that the individual was involved in a shooting. *Id*. at 828. The Sixth Circuit differentiated *Robinson* from *J.L.* for four reasons. First, the caller was not completely anonymous – "the call was made by a citizen-tipster, who was an eyewitness to the events he reported to the police, and who provided his address to the police dispatcher." *Id*. at 829. Second, it was a contemporaneous eyewitness account. *Id*. Third, the call also described shots being fired. *Id*. at 830. Finally, reasonable suspicion was based on more than just the 911 call because there was also evidence of the suspect acting evasively and running after being ordered to stay put.

Here, there was a 911 call asserting that an individual was armed, there was a break-in at the caller's home, and she had fled to another apartment because she did not feel safe. Unlike

suspicion to perform an investigatory stop. In *J.L.,* the Supreme Court held that an anonymous tip that a person was carrying a gun, without more, was not enough to justify a police officer's stop and frisk. 529 U.S. at 268. The anonymous tip stated that there was a "young black male standing at a particular bus stop and wearing a plaid shirt and carrying a gun." *Id*. Nothing was known about the informant, it was unclear when law enforcement received the tip, the defendant did not make any threatening or unusual movements, the officers did not see a firearm, and besides the tip the officers did not have any reason to suspect illegal conduct. *Id*. As a result, the Court concluded the anonymous tip alone did not justify the stop and frisk.

Magistrate Judge Stinnett also references *Robinson v. Howes* in assessing whether there was reasonable articulable suspicion. In *Robinson*, a 911 caller reported shots fired from a yellow vehicle at a specific address. 663 F.3d at 821. When law enforcement arrived at the scene and spotted the yellow vehicle, the driver fled the vehicle and "a wrestling match ensued." *Id*. at 821-22. The Sixth Circuit concluded that the 911 call and the suspect's evasive conduct gave rise to reasonable suspicion that the individual was involved in a shooting. *Id*. at 828. The Sixth Circuit differentiated *Robinson* from *J.L.* for four reasons. First, the caller was not completely anonymous – "the call was made by a citizen-tipster, who was an eyewitness to the events he reported to the police, and who provided his address to the police dispatcher." *Id*. at 829. Second, it was a contemporaneous eyewitness account. *Id*. Third, the call also described shots being fired. *Id*. at 830. Finally, reasonable suspicion was based on more than just the 911 call because there was also evidence of the suspect acting evasively and running after being ordered to stay put.

Here, there was a 911 call asserting that an individual was armed, there was a break-in at the caller's home, and she had fled to another apartment because she did not feel safe. Unlike

the tipster in *J.L.*, who was an unknown caller from an unknown location, the caller here was not anonymous and calling from her apartment complex. *See J.L.*, 529 U.S. at 276 (Kennedy, J., concurring) ("If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip."). Next she introduced herself and freely talked to officers at the scene. Additionally, she remained at the scene while making the call and was still at the scene when officers arrived.

Roughly ten minutes after the 911 call was received, Officer Bedtelyon arrived on the scene, which appeared to be volatile, and spotted an individual who roughly matched the description given by the 911 caller. Moberly appeared agitated and nervous when he interacted with Bedtelyon. Bedtelyon then attempted to build rapport with Moberlyim in an effort to calm him down. Bedtelyon also testified that Moberly's demeanor led him to investigate further. This Court agrees with Magistrate Judge Stinnett's assessment and characterization of the scene and Moberly's behavior. The body camera footage reveals multiple people clustered around and Moberly appears agitated. Further, Bedtelyon testified that Moberly appeared nervous. [Record No. 27, p. 25] And there is nothing in the record to disturb Magistrate Judge Stinnett's credibility determination of Bedtelyon's testimony regarding his conclusion that Moberly appeared nervous.

Further, Moberly corroborated much of the information included in the 911 call because he admitted that the woman (later identified as the 911 caller) pushed him and ran. Additionally, the area where the incident took place is a high crime area. [Record No, 27, p. 5; *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (explaining that the Court can consider the crime level of the area as a "contextual consideration").] Based on a review of

the totality of the circumstances, sufficient facts demonstrate that the officer had reasonable articulable suspicion to conduct an investigatory stop.

Additionally, the defendant told the officers he had a weapon before Bedtelyon conducted a pat down. However, Bedtelyon had reasonable articulable suspicion to conclude that the suspect was armed and dangerous. The call originally noted that the suspect possessed a gun and that a burglary had occurred. Further, Moberly appeared agitated and there were multiple people at the scene arguing. Additionally, Bedtelyon was concerned that Moberly took a defensive position and asked if he was "squaring up on him." [Body Cam at 1:30-2:30] Based on the foregoing, there is sufficient evidence to demonstrate reasonable articulable suspicion that Moberly was armed and dangerous to justify a *Terry* frisk.

Moberly objects to Magistrate Judge Stinnett's reliance on *United States v. Howard* and believes that this case is distinguishable. Magistrate Judge Stinnett cites *Howard* and notes that "the Sixth Circuit has placed particular emphasis on whether officers can assess the informant's reputation or otherwise evaluate her credibility and that the threat of prosecution for filing a false statement is given considerable weight due to its circumstantial evidence of veracity." [Record No. 28, p. 5 (citing *Howard*, 632 F. App'x at 799-800).] Moberly is right, and Magistrate Judge Stinnett notes, this case is distinguishable from *Howard* because *Howard* arose in the context of probable cause for a search warrant, which is a higher burden to meet than the reasonable articulable suspicion needed to conduct the *Terry* stop here. In this case, there is an indicia of reliability to support the 911 caller's tip. The caller was an eyewitness, remained at the scene, and spoke freely to officers when they arrived. Officers were able to evaluate her credibility because she disclosed her identity and continued to speak with them about what happened. Accordingly, this objection is without merit.

Because Officer Bedtelyon had reasonable articulable suspicion to conduct an investigatory stop and frisk, Moberly's Fourth Amendment rights were not violated and suppression of the evidence found on his person is not warranted.

### III.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. The Report and Recommendation of United States Magistrate Judge Matthew Stinnett [Record No. 28] is **ADOPTED** and **INCORPORATED** here by reference.

2. Defendant Moberly's motion to suppress [Record No. 18] is **DENIED**.

3. Defendant Moberly's objections to the Report and Recommendation [Record No. 29] are **OVERRULED**.

Dated: November 8, 2019.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky