UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 19-136-DCR |
| ) | |
| V. ) | |
| ) | |
| RAKIM MOBERLY, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Rakim Moberly pleaded guilty to possessing with the intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and possessing a firearm after having been convicted of a felony offense in violation of 18 U.S.C. § 922(g). [Record No. 33] He was sentenced to a total term of 128 months of imprisonment, to be followed by a 5-year term of supervised release. [Record No. 47]

Moberly has now filed a motion for a sentence reduction or compassionate release under 18 U.S.C. § 3582(c)(1)(A). [Record No. 65] In support, Moberly contends that he is at risk of contracting the COVID-19 virus at his facility and suffering serious harm or death. He notes that he has a history of epilepsy/seizures, obesity, and heavy cigarette smoking. Moberly claims that his health conditions constitute extraordinary and compelling reasons to justify compassionate release. He also explains that he was offered the Pfizer COVID-19 vaccine but declined to have it administered because health care officials could not assure that he would not have adverse side effects due to his seizure disorder. Additionally, Moberly complains

about the conditions and treatment at USP Lompoc.[1]  The United States objects to the motion, contending that Moberly has failed to exhaust his administrative remedies.

An inmate may seek compassionate release by the district court only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  The exhaustion requirement is mandatory and the Court is bound to enforce it when it is properly invoked by the government.  *United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020).  It is the defendant's burden to show that he has exhausted his administrative remedies.  *United States v. Pena-Lora*, No. 15-20695, 2020 U.S. Dist. LEXIS 120429, at *1 (E.D. Mich. July 9, 2020).

Moberly attached to his motion an e-mail, dated December 7, 2021, to "AW Operations" requesting compassionate release due to his medical issues and the COVID-19 pandemic.  [Record No. 65-3]  However, the United States responds that this e-mail is insufficient to exhaust administrative remedies because it was sent to the wrong e-mail box and never properly forwarded to the Warden at Moberly's facility.  [Record No. 67, p. 3]  The United States attached an e-mail, dated June 9, 2022, from the Bureau of Prisons indicating that Moberly's e-mail was not properly forwarded, but that it would forward the e-mail "to be processed accordingly."  [Record No. 67-1]

The government contends that, "while Moberly asserts that he filed a request for compassionate release with the Warden, he technically did not.  Since he failed to submit his

---

[1] A motion for compassionate release is not the proper mechanism to consider Moberly's various grievances about the conditions at USP Lompoc and inmates' treatment by prison officials.  *See Turnboe v. Gundy*, 27 F. App'x 339, 340 (6th Cir. 2001).

request properly, his request has not been considered by the Bureau of Prisons and he has not availed himself of the Bureau of Prisons administrative processes." [Record No. 67, p. 4]

The statute explicitly states that a defendant may bring a compassionate release on his own behalf after the "lapse of 30 days from the *receipt* of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The e-mail from the Bureau of Prisons indicates that the Warden never received Moberly's request. Based on the plain language of the statute, Moberly has not exhausted his administrative remedies and his motion for compassionate release should be denied. *See United States v. Wooldridge*, No. 1:18cr150-HSO, 2020 U.S. Dist. LEXIS 176614, at *5-6 (S.D. Miss. Sept. 25, 2020) (holding that a prisoner had not exhausted her administrative remedies because even though the prisoner had averred that she e-mailed a request to the Warden, there was no indication that the e-mail was ever received by the Warden). But even assuming Moberly's e-mail was sufficient to exhaust his administrative remedies, he cannot show that extraordinary and compelling reasons justify compassionate release.

This Court utilizes a three-step framework when evaluating motions for compassionate release. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (cleaned up) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)). First, the Court must find that "extraordinary and compelling reasons warrant a sentence reduction." *Id*. Second, the Court must determine that a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[2] *Id*. Finally, the Court must "consider all relevant

---

[2] When a defendant files a motion for compassionate release, instead of the Bureau of Prisons, the Court is not bound by the United States Sentencing Guidelines § 1B1.13. *Elias*, 984 F.3d at 518.

sentencing factors listed in 18 U.S.C. § 3553(a)." *Id*.  The Court has discretion to reduce the term of imprisonment if these three requirements are met, but it is not required to do so.  *Id*.

Moberly asserts that his medical ailments and obesity, in combination with the COVID-19 pandemic, constitute extraordinary and compelling reasons to justify his release.  However, his concern that his medical conditions put him at higher risk if he were to contract the COVID-19 virus is not an extraordinary and compelling reason to warrant compassionate release.  The United States Court of Appeals for the Sixth Circuit has held that a "defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)).  The court did acknowledge though that "a prisoner who is 'unable to receive or benefit from a vaccine' may still be able to show 'extraordinary and compelling reasons' warranting a sentence reduction." *Id*.  However, it concluded that "if an inmate does not present a compelling reason justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction under § 3582(c)(1)(A)(i) on the grounds that COVID-19 constitutes an extraordinary and compelling justification." *Id*.

Here, Moberly argues that: (1) he was not assured that he would not have serious side effects from the vaccine due to his epilepsy and (2) there is no evidence that vaccination would assure that COVID-19 would not place him in danger of serious illness or death.  First, based on current data, "the COVID-19 vaccine is safe for people with epilepsy. . . . there is no evidence that patients with epilepsy are at a higher risk of adverse complications after getting the COVID-19 vaccine." *Coronavirus, the COVID-19 Vaccine and Epilepsy: What You Need*

- 4 -

*to Know*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/coronavirus-the-covid19-vaccine-and-epilepsy (last visited June 3, 2022); *see also COVID-19 Vaccination & Epilepsy*, https://www.epilepsy.com/complications-risks/covid-19/vaccination (last visited June 3, 2022) ("There is no evidence that persons with epilepsy are at higher risk of side effects after vaccination.").

Second, the consensus is that vaccination reduces the risk of serious illness and death from the COVID-19 virus. The Sixth Circuit in *Lemons* explained that, "following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced." *Id.* (citing *Benefits of Getting a COVID-19 Vaccine*, Centers for Disease Control and Prevention (last updated Aug. 16, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html). This Court has also recognized that, "[w]hile the vaccine is not 100% effective at preventing COVID-19 infection, it reduces the risk of serious illness or death from COVID-19, even in patients with high-risk medical conditions. For this reason, the glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion." *Blackwell*, 2022 U.S. Dist. LEXIS 72764, at *7 (quoting *United States v. Tobin*, No. 2:10-CR-00757, 2021 U.S. Dist. LEXIS 165711, at *9 (S.D. Tex. Aug. 31, 2021)); *see also United States v. Csiki*, No. 21-2671, 2022 U.S. App. LEXIS 8266, at *4 (6th Cir. Mar. 29, 2022) ("Allowing a prisoner to qualify for compassionate release in the face of his refusal to receive a COVID-19 vaccine would serve to discourage prisoners from becoming vaccinated."). Moberly's decision to remain unvaccinated undercuts any argument that he has presented extraordinary and compelling reasons justifying compassionate release.

But even if Moberly could show that there are extraordinary and compelling reasons justifying his release, evaluation of the 18 U.S.C. § 3553(a) factors weigh against granting his motion. Moberly argues that the § 3553(a) factors weigh in favor of release because he has been rehabilitated while in prison and has been a model prisoner, his criminal history is not as serious as other individuals who have been released because of the COVID-19 pandemic, and he is not a danger to the community. Additionally, he contends that the time he has already served is sufficient to reflect the seriousness of his offense and provide just punishment.

First, the history and characteristics of the defendant continue to weigh against release. Moberly has a lengthy criminal history including two prior drug trafficking convictions, three possession of controlled substances convictions, and a robbery conviction. During the sentencing hearing, the Court explained that Moberly had a number of concerning convictions, his conduct was dangerous and serious, and he presented a danger to the public. [Record No. 57, p. 15] While Moberly argues that his lack of disciplinary history and rehabilitative efforts while incarcerated are reflective of his current history and characteristics, his positive prison conduct does not negate the fact that he has a lengthy criminal history. The Court commends Moberly for taking steps to better himself while incarcerated; however, these positive steps do not outweigh the fact that Moberly has a substantial criminal history.

Second, the Court disagrees with Moberly's contention that serving 3 years of his original 10-year sentence is sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). Additionally, Moberly's original sentence imposed was sufficient but not greater than necessary to serve the statutory goals of sentencing. It provides adequate specific and general deterrence and is

designed to protect the public from future criminal activity of the defendant.  18 U.S.C. § 3553(a)(2)(B)-(C).  Accordingly, it is hereby

**ORDERED** that Defendant Rakim Moberly's motion for compassionate release [Record No. 65] is **DENIED**.

Dated:  June 21, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky